**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **JAWONNA WALLS,**<br>*on behalf of herself and all others similarly situated,*<br><br>Named Plaintiff,<br><br>v.<br><br>**NHB HOLDINGS, LLC, NEW HORIZONS BAKING COMPANY, LLC, GENESIS BAKING COMPANY, LLC, AND NEW HORIZONS FOOD SOLUTIONS, LLC,**<br><br>Defendants. | Case No. 3:26-cv-1191<br><br>**<u>JURY DEMAND ENDORSED HEREON</u>** |

**<u>PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND STATE LAW</u>**

Now comes Named Plaintiff Jawonna Walls ("Named Plaintiff"), by and through undersigned counsel, *individually and on behalf of all others similarly situated*, with her Collective and Class Action Complaint against Defendants NHB Holdings, LLC, New Horizons Baking Company, LLC, Genesis Baking Company, LLC, and New Horizons Food Solutions, LLC ("Defendants" or "New Horizons"), for Defendants' willful failure to pay Named Plaintiff and other similarly situated employees overtime wages as well as its willful failure to comply with all other requirements of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, and unjust enrichment common law, and alleges as follows:

## I. INTRODUCTION

1. The FLSA is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The FLSA required Defendant to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207. Ohio statutory and common law further required the payment of overtime compensation and/or contained or required other compensation requirements. *See* O.R.C. § 4113.15.

2. Named Plaintiff brings this Collective and Class Action Complaint to challenge the policies and practices of Defendant that violate the FLSA, 29 U.S.C. §§ 201-219, as well as the laws of the State of Ohio, to recover unpaid wages and other damages from Defendant.

3. As to Count I, Named Plaintiff seeks to prosecute FLSA claims as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated" (the "FLSA Collective," as defined below).

4. As to Counts II and III, Named Plaintiff also brings this case as a class action under Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons who assert claims under two state law subclasses (the "State Law Class," as defined below).[1]

---

[1] Some members of the FLSA Collective are also members of the State Law Class, as both are defined hereinafter, as is Named Plaintiff.

5. Named Plaintiff, the FLSA Collective, and the State Law Class now seek to exercise their rights to unpaid overtime wages, non-overtime hours (as applicable), and additional statutory liquidated damages in this matter (as applicable), other penalties, prejudgment and post-judgment interest (as applicable), costs and attorneys' fees incurred in prosecuting this action, the employer's share of relevant taxes, and such further relief as the Court deems equitable and just as a result of Defendant's companywide unlawful pay policies/practices as more fully described below.

## II. <u>JURISDICTION AND VENUE</u>

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b). Since Defendant maintains its corporate headquarters in this judicial district, this Court also has general jurisdiction.

7. This Court also has supplemental jurisdiction over the state-law claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

8. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to these claims emanated from its corporate headquarters, which is located occurred in this judicial district, and Defendant has conducted substantial business in this judicial district.

## III. <u>PARTIES</u>

### A. Named Plaintiff

9. Named Plaintiff is an individual, a citizen of the United States, and a resident of the State of Ohio.

10. During the three (3) years preceding the filing of this Complaint, Named Plaintiff has worked as an hourly, non-exempt manufacturing/production employee for Defendant.

11. Named Plaintiff's Consent to Join is filed herewith, pursuant to 29 U.S.C. § 216(b), attached as **Exhibit A**, and is fully incorporated by reference herein.

**B. Defendants' Business, Defendants' Status as an Employer, and Defendants' Status as an Enterprise**

12. NHB Holdings, LLC is a privately held, family-owned holding company that oversees several subsidiaries in the food production industry. The primary entities that it operates include New Horizons Baking Company, Genesis Baking Company, Metraco Transportation Company, and New Horizons Food Solutions.

13. Defendant NHB Holdings, LLC is incorporated under Ohio law with its principal place of business located in Norwalk, Ohio. Defendant NHB Holdings, LLC is also believed to be the parent company of all other Defendants.

14. Through its subsidiaries and/or affiliated entities, NHB Holdings, LLC operates additional facilities in Ohio, Indiana, and other states to be identified in discovery.

15. Defendant New Horizons Baking Company, LLC is incorporated under Indiana law with its principal place of business located in Norwalk, Ohio

16. New Horizons Baking Company specializes in producing custom English muffins and soft rolls for major quick-service restaurant brands, retail, and food service sectors.

17. Defendant Genesis Baking Company, LLC is a domestic limited liability company formed under the laws of the State of Ohio law with its principal place of business believed to be located in Norwalk, Ohio.

18. Genesis Baking Company, launched in 2004, "is part of New Horizons" and extends the group's baking operations.

19. Defendant New Horizons Food Solutions, LLC is incorporated under Ohio law with its principal place of business located in Norwalk, Ohio.

20. At all times relevant, Defendants have been a joint "employer" of Named Plaintiff and the FLSA Collective within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and has been an employer of Named Plaintiff and the State Law Class within the meaning of state law.

21. Defendants jointly employ many hundreds, if not thousands, of hourly, non-exempt employees, including Named Plaintiff, the FLSA Collective, and the State Law Class in furtherance of their business purposes and operates multiple facilities, including, but not limited to operating facilities throughout Ohio and Indiana, among other facilities to be identified in discovery.[2]

22. During the relevant time period preceding the filing of this Complaint, it is estimated that there are in excess of several hundred, if not thousands of, employees who are similarly situated to Named Plaintiff.

23. These hourly, non-exempt employees are all subject to the same or similar policies pertaining to computing hours worked and compensation.

24. At all times relevant, Defendants have been an enterprise within the meaning of 29 U.S.C. § 203(r). More specifically, each Defendant performs related activities through unified operations and common control for a common business purpose.

25. Defendants form a single "employer" as a single integrated enterprise and/or are joint employers of Named Plaintiff and similarly situated manufacturing/production employees because they operate a chain of facilities with interrelated operations, centralized control of labor relations, common management and ownership, and financial control.

---

[2] *See* https://newhorizonsbaking.com/contact/ (last accessed May 22, 2026).

26. At all times relevant, Defendants have had direct or indirect control and authority over Named Plaintiff's, the FLSA Collective's, and the State Law Class's working conditions, including matters governing the essential terms and conditions of their employments.

27. At all times relevant, Defendants have exercised authority and control over Named Plaintiff, the FLSA Collective, and the State Law Class.

28. At all times relevant, Defendants have had the authority to (and currently does) hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain (or is otherwise required to maintain) employee records of Named Plaintiff, the FLSA Collective, and the State Law Class.

29. At all times relevant, Defendants are an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1)(A)(i), and their employees handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

30. During the preceding three (3) years, Defendants have had annual gross volume of sales made or business done of at least $500,000 (exclusive of excise taxes at the retail level that are separately stated) pursuant to 29 U.S.C. § 203(s)(1)(A)(ii).

31. As alleged herein, Defendants have applied policies and/or practices pertaining to the payment of wages, including overtime and other compensation, and timekeeping uniformly to its hourly, non-exempt employees.

32. Defendants jointly retain ultimate authority and operational control over significant aspects of the day-to-day functions of Defendants' facilities, including supervising and controlling work schedules and conditions of employment of Named Plaintiff, the FLSA Collective, and the State Law Class.

33. At all relevant times, Defendants have suffered or permitted Named Plaintiff and other similarly situated employees to work. The work that Named Plaintiff and other similarly situated employees performed was for Defendants' benefit.

34. At all times relevant, Defendant was fully aware of the fact that it was legally required to comply with federal wage and overtime laws.

## IV. FACTS

35. Defendants' enterprise, the New Horizons Family, is comprised of a baked goods and food ingredient manufacturing operation. Defendant New Horizons Baking Company primarily produces hamburger buns and English muffins for restaurants, food service facilities, and wholesale establishments. Defendant Genesis Baking Co offers English muffins and rolls, as well as product development and supply chain optimization. Defendant New Horizons Food Solutions produces food ingredients specializing in custom spice blending, seasoning blends, bakery blends, sauces, and premixes, and also offers packaging, and supply chain solutions for clients.

36. Since Defendants manufacture food products for major quick-service brands, they are regulated by the U.S. Food and Drug Administration ("FDA"), and are subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq*. (hereinafter "FDCA").

37. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendants are required by law to comply.

38. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty to the extent necessary to protect

against contamination of food." 21 C.F.R. § 110.10(b) (emphasis added). These practices include, but are not limited to:

(a) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials;

(b) Maintaining adequate personal cleanliness;

(c) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate handwashing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated;

(d) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials;

(e) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material;

(f) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints;

(g) Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed;

(h) Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

39. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." *See* 21 C.F.R. §110.10(d).

40. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. *See* 21 U.S.C. § 331.

41. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

42. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

43. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. *See* 21 C.F.R. § 110.5(a).

44. Consequently, if Defendants' employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

45. Thus, it would be impossible for Plaintiff and those similarly situated, who were engaged in the manufacturing, processing, packaging and handling of food products, to perform their work duties unless they wore sanitary clothing that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

46. If Named Plaintiff and those similarly situated did not follow federal law and wear sanitary clothing or protective gear that protects against the contamination of food, food-contact

surfaces, or food packaging materials, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendants' products.

47. Upon information and belief, Defendants would deem it impossible for their employees to perform their job duties unless they were in compliance with federal food safety laws, including the laws requiring Defendants' employees to wear sanitary clothing.

48. As a result, compliance with the GMPs by Defendants' employees involved in the manufacturing, processing, packaging and handling of food is integral and indispensable to the work they are hired to do.

49. Compliance with the GMPs by Defendants' employees involved in the manufacturing, processing, packaging and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

50. Compliance with the GMPs by Defendants' employees involved in the manufacturing, processing, packaging and handling of food is a component of the work they are hired to do.

51. Unless Defendants' employees involved in the manufacturing, processing, packaging and handling of food comply with the GMPs, they cannot complete their work.

52. Therefore, the donning and doffing of sanitary clothing that protects against the contamination of food, food-contact surfaces, or food-packaging materials, as well as handwashing, are integral and indispensable to the work performed by Defendants' employees who are involved in the manufacturing, processing, packaging and handling of food.

53. Because the donning and doffing of sanitary clothing that protects against the contamination of food, food-contact surfaces, or food-packaging materials are integral and indispensable to the work performed by Defendants' employees who are involved in the

manufacturing, processing, packaging and handling of food, the time spent donning and doffing and handwashing are compensable work time within the meaning of the FLSA.

54. Handwashing and the donning of sanitary clothing that protects against the contamination of food, food-contact surfaces, or food-packaging materials by Defendants' employees involved in the manufacturing, processing, packaging and handling of food is those employees' first principal activity of the day.

55. The doffing of sanitary clothing that protects against the contamination of food, food-contact surfaces, or food-packaging materials by Defendants' employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

56. Pursuant to the "Continuous Workday Rule," Defendants' employees involved in the manufacturing, processing, packaging and handling of food should have been compensated for all time spent from their first principal activity of the day to their last principal activity of the day, other than bona fide meal breaks.

57. Due to the nature of the food manufacturing, processing and preparation work, Named Plaintiff and those similarly situated were required to wear special clothing and personal protective equipment, including beard nets, hairnets, safety glasses, and scrubs.

58. Named Plaintiff was employed by Defendant as an hourly, non-exempt employee in the position of operator from approximately August 2021 through September, 2025 at one of Defendants' manufacturing facilities in Toledo, Ohio.

59. At all times relevant, Named Plaintiff has been an hourly, non-exempt employee.

60. In her position as an hourly, non-exempt worker, Named Plaintiff primarily performed job duties related to the manufacturing process to keep production running smoothly in

a fast-paced work environment since Defendants' business is a continuous operation and have shifts that run on a 24/7 basis.

61. In particular, Named Plaintiff's responsibilities included preparing, operating, and monitoring machinery, conducting quality checks, and other related job duties.

62. The manufacturing of packaging that Named Plaintiff and similarly situated others were responsible for coming into contact with, monitoring, and producing involved complying with the FDA, attendant regulations, and GMPs as alleged above.

63. At all times relevant, Named Plaintiff, the FLSA Collective, and the State Law Class were also hourly, non-exempt employees entitled to overtime compensation at the rate of one-and-one-half times (1.5x) their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207.

64. At all times relevant, Named Plaintiff, the FLSA Collective, and the State Law Class have been non-exempt employees within the meaning of 29 U.S.C. § 203(e) and State Law.

65. At all times relevant, Named Plaintiff, the FLSA Collective, and the State Law Class have been employees engaged in commerce within the meaning of 29 U.S.C. § 207.

66. At all times relevant, Named Plaintiff, the FLSA Collective, and the State Law Class are entitled to timely paid overtime compensation at the rate of one-and-one-half times (1.5x) their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207.

67. Named Plaintiff, the FLSA Collective, and the State Law Class worked overtime hours during one or more workweek(s) during their employment with Defendants.

68. Like the other FLSA Collective and State Law Class members, Named Plaintiff worked more than forty (40) hours in one or more workweek(s). Defendants were aware that

Named Plaintiff, the FLSA Collective, and the State Law Class worked overtime hours, but Defendants did not fully and properly pay them in accordance with the minimum requirements of the FLSA and State Law for all of their compensable overtime hours worked due at the correct overtime rates as a result of the companywide policies/practices described below.

69. Defendants consistently, willfully, and intentionally failed to pay Named Plaintiff, the FLSA Collective, and the State Law Class for all hours, including overtime hours, worked at the statutory overtime rate required. 29 U.S.C. § 207.

**(Defendant's Failure to Pay for All Overtime Hours Worked Before and After Scheduled Shifts)**

70. Defendants' policy or practice states that team members are "[e]ncouraged to arrive for work fifteen (15) minutes prior to their designated starting time" because it will allow adequate time to perform their preparatory job duties.

71. Despite being required to perform such work, Named Plaintiff and other similarly situated production/manufacturing employees were not fully and properly paid for all overtime wages and other compensation during their employment with Defendant.

72. Instead, Defendants maintained a policy of rounding its employees' hours worked down in Defendant's favor or otherwise not paying for employees' total hours worked (hereinafter the "Timekeeping Policy").

73. In particular, Defendants require their hourly, non-exempt production/manufacturing employees to don sanitary clothing such as uniforms that are stored at the facility and cannot be taken home because they are cleaned by a third-party laundry service.

74. After they don their uniforms, Named Plaintiff and other hourly, non-exempt workers clock in and out each day using a centralized timekeeping system that records exactly when an employee clocks in and out each day to keep track of their work hours.

75. After Named Plaintiff and other manufacturing/production workers clock in for the workday, they immediately begin performing pre-shift work, preparatory, and other job duties that are integral and indispensable to their production/manufacturing job duties.

76. Specifically, before their scheduled shift start time, Named Plaintiff and other similarly situated hourly production/manufacturing employees were required to handwash, don other sanitary clothing such as hairnets, latex gloves, and beard nets (as applicable). Named Plaintiff and other similarly situated employees were not permitted to take any of this sanitary clothing/gear home.

77. After donning the rest of the sanitary clothing, Named Plaintiff and others were required to perform other integral and indispensable work, including participating in a pre-shift meeting with supervisors to receive instruction, work assignments, and discuss issues relating to their shift, engaging in a shift relief process with the previous shift's workers, and performed other pre-shift preparatory work that was integral and indispensable to their jobs.

78. Although Named Plaintiff and other similarly situated hourly production/manufacturing employees performed the above-referenced job duties prior to the scheduled "start" time of their shifts, they were not paid for such time.

79. Instead, Defendants began paying them at the scheduled "start" time of their shifts.

80. Named Plaintiff, the FLSA Collective, and State Law Class could also not leave their work areas until they were relieved by the incoming shift because they engage in a similar shift relief process, which caused them to work beyond their scheduled end time of their shifts.

81. After they were relieved by the incoming shift's employees, Named Plaintiff and other similarly situated employees were required to doff their sanitary clothing/gear at Defendant's facilities.

82. Despite knowing that Defendants' production/manufacturing employees performed compensable job duties after their scheduled "end" time of their shifts, Defendants failed to pay Named Plaintiff and similarly situated others for all hours worked.

83. Defendants have applied the Timekeeping Policy to systematically round employees' compensable work time down in Defendants' favor or otherwise fails to pay for all work performed prior to the scheduled "start" and after the scheduled "end" times of their shifts.

84. Defendants' failure to compensate Named Plaintiff and other similarly situated production/manufacturing employees, as set forth above, has resulted in unpaid overtime and other wages.

85. Defendant's Timekeeping Policy, as alleged herein, has denied Named Plaintiff and those similarly situated production/manufacturing employees compensable overtime hours and compensation to which they were entitled because the Timekeeping Policy requires their workers to perform integral and indispensable work prior to the scheduled "start" of their shifts and they perform job duties that cause them to work beyond the scheduled "end" of their shifts without compensation.

86. Defendants' policies described herein resulted in unpaid overtime and other compensation for Named Plaintiff and other similarly situated hourly production/manufacturing employees.

87. During relevant times, Defendants have known of and acted willfully regarding their conduct described herein. Defendants knew or had reason to know that Named Plaintiff and others similarly situated worked overtime without compensation for all overtime hours worked as described herein.

**(Defendants' Failure to Pay Overtime at the Correct Regular Rate of Pay)**[3]

88. Defendant paid Named Plaintiff, the FLSA Collective, and the State Law Class a base hourly wage for hours worked.

89. In addition to the base hourly wage, Defendants paid their hourly non-exempt employees one or more additional form(s) of nondiscretionary remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes.

90. Examples of additional forms of nondiscretionary remuneration include, but are not limited to, shift premiums for working certain shifts, attendance bonuses, and other forms of compensation that were based on objective, predetermined, and measurable criteria. These additional payments induced workers to work more efficiently, productively, or at undesirable hours; incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly, and/or efficiently; and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Defendant's business (all types of nondiscretionary remuneration hereinafter "Additional Remuneration"). *See* 29 C.F.R §§ 778.207(b), 778.211(c); U.S. DEP'T OF LAB., *Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA)*, https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (Dec. 2019).

91. The Additional Remuneration that does not qualify for exclusion but must be totaled with other earnings to determine the calculation of an employee's regular rate of pay for the purposes of computing overtime compensation. *See* 29 C.F.R. § 778.200.

---

[3] While Named Plaintiff is not in possession of her payroll records, she received a shift premium for working 3rd shift, among other incentive payments, and will confirm the extent of the regular rate of pay allegations through discovery.

92. Defendants informed, announced, and/or promised to Named Plaintiff, the FLSA Collective, and the State Law Class the non-discretionary Additional Remuneration upon hiring or otherwise during their employment. Named Plaintiff, the FLSA Collective, and the State Law Class expected to, and did, receive one or more forms of Additional Remuneration.

93. During the last three (3) years preceding the filing of this Complaint, Named Plaintiff, the FLSA Collective, and the State Law Class received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweek(s) when they worked more than forty (40) hours in a single workweek.

94. Upon information and belief, however, Defendants failed to fully include one or more forms of Additional Remuneration in calculating Named Plaintiff's, the FLSA Collective's, and the State Law Class's regular rates of pay for overtime purposes during workweeks when they worked overtime.

95. Because Named Plaintiff worked overtime during this workweek, received non-discretionary incentive pay, and Defendant failed to include one of more forms of Additional Remuneration in his regular rate of pay for purposes of calculating overtime premium, resulting in Defendant's failure to fully pay Named Plaintiff all overtime premiums that were due to him and similarly situated others.

96. Defendants applied this pay practice to Named Plaintiff, the FLSA Collective, and the State Law Class in the same or a similar manner as described above.

97. As a result of Defendants' companywide policy or practice of failing to include Additional Remuneration in the regular rate of pay for purposes of calculating overtime compensation, Named Plaintiff, the FLSA Collective, and the State Law Class were not fully and properly paid for all of their compensable overtime hours worked because Defendants did not

correctly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and State Law, which resulted in unpaid overtime wages.

98. Defendants' failure to compensate Named Plaintiff and the FLSA Collective for hours worked more than forty (40) hours per week at "one and one-half times" the employee's "regular rate[s]" of pay constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and State Law, which requires the timely payment of all wages, including overtime wages, that are earned and owed.

**(Recordkeeping Violations)**

99. The FLSA requires Defendants to maintain accurate and complete records of employees' time worked and amounts earned and paid. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; O.R.C §§ 4111.08, 4111.14(F); and Ohio Const. Art. II, § 34a.

100. For example, the FLSA requires employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. *See* 29 C.F.R. § 516.2.

101. Defendants kept records of hours worked or otherwise had the ability to accurately track hours worked through Defendants' hardware, software, and/or systems, by Named Plaintiff and other similarly situated hourly production/manufacturing employees.

102. However, because of Defendants' policies and practices described herein, Defendants failed to accurately track, keep, or transmit the hours worked each day by Named Plaintiff and other similarly situated hourly production/manufacturing employees.

103. Defendants willfully and intentionally transmitted inaccurate and/or incomplete records to payroll for compensation purposes. Defendants' failure to pay overtime at the correct rate and pay all overtime hours worked because of the Timekeeping Policy had the direct effect of reducing Defendants' labor costs to the detriment of Named Plaintiff and other similarly situated hourly production/manufacturing employees.

104. Defendants willfully and intentionally did not correctly record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

105. Upon information and belief, Defendants have applied these same policies to all of its hourly, non-exempt production/manufacturing employees.

106. As a result of Defendants' companywide policy and/or practice of rounding its employees' hours worked consistently to their detriment or otherwise failing to pay for all hours worked as alleged herein, Defendants knew or had reason to know that it was not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all hours worked.

107. The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201–219, and resulted in the unlawful deprivation of wages of Defendants to the detriment of Defendants' employees, including Named Plaintiff, the FLSA Collective, and the State Law Class.

## V. COLLECTIVE AND CLASS ACTION ALLEGATIONS

### A. FLSA Collective Action for Unpaid Overtime Wages

108. Named Plaintiff brings Count I of this action on behalf of herself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct as described herein.

109. The "FLSA Collective" to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff herself is a member, is composed of and defined as follows:

> **All of Defendants' current and former hourly production/manufacturing employees who were paid for 40 or more hours during one or more workweek(s) and who were: (1) subject to Defendants' Timekeeping Policy or (2) received Additional Remuneration, beginning three (3) years preceding the filing of the original Complaint and continuing through the final disposition of this case ("FLSA Collective" or "FLSA Collective Members").** [4]

110. Such persons are "similarly situated" with respect to Defendants' FLSA overtime violations in that all were non-exempt employees of Defendants, all were subjected to and injured by Defendants' unlawful practice of failing to pay overtime compensation at the correct regular rate of pay, and all have the same claims against Defendants for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

111. Named Plaintiff and the members of the FLSA Collective, having willfully not been paid at least the federal overtime wage for the overtime hours they worked for Defendant pursuant to the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 207.

112. Named Plaintiff and the members of the FLSA Collective have been similarly affected by the FLSA overtime violations in one or more workweek(s) during the relevant time

[4] Named Plaintiff reserves the right to amend the definition of to whom she seeks to have provided with Court-authorized notice based upon further investigation and discovery.

period, which amount to a single decision, policy, or plan to willfully avoid paying all owed federal overtime wages.

113. Named Plaintiff and the members of the FLSA Collective have been damaged by Defendants' willful refusal to pay at least the federal overtime wage for all overtime hours worked. As a result of Defendants' willful FLSA violations, Named Plaintiff and the members of the FLSA Collective are similarly situated to each other in that they are all entitled to damages, including but not limited to unpaid wages, liquidated damages, costs, and attorneys' fees.

114. Throughout her employment with Defendants, Named Plaintiff was subjected to the same timekeeping and payroll policies and practices by Defendants that led to less overtime wages paid than overtime hours worked as were other members of the FLSA Collective.

115. Named Plaintiff is similarly situated to the members of the FLSA Collective and will prosecute this action vigorously on their behalf as well as her own.

116. This action is brought pursuant to 29 U.S.C. § 216(b) of the FLSA and seeks unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former non-exempt employees are similarly situated regarding their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as her own, in bringing this action.

117. Issuing notice to the FLSA Collective pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and allowing them to "opt in" to the same.

118. Named Plaintiff is entitled to send notice to all potential members of the FLSA Collective pursuant to Section 216(b) of the FLSA. Identification of potential members of the

FLSA Collective is readily available from the timekeeping and compensation records, including timekeeping and payroll data, maintained by Defendants. For the purposes of notice and other things related to this action, the FLSA Collective's names, mailing addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under the FLSA and decisional law.

119. Court-supervised notice pursuant to 29 U.S.C. § 216(b) to potential members of the FLSA Collective is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including, *inter alia*, whether Defendants satisfied the FLSA's requirements for payment of statutory overtime wages.

120. Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b)—by Court order—is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and allowing them to "opt in" to the same.

121. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

122. The precise size and identity of the group of potential members of the FLSA Collective are readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendants that they were required to maintain pursuant to the FLSA. Named Plaintiff cannot yet state the exact number of similarly situated persons but avers, upon information and belief, that the group of potential members of the FLSA Collective consists of approximately several hundred or more persons.

### B. Federal Rule of Civil Procedure 23 Class Action for Unpaid Wages

123. Named Plaintiff brings Counts II-III under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the State Law Class into two subclasses.

124. In particular, Named Plaintiff brings Count II under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the Ohio Class under O.R.C. § 4113.15, defined as:

> **All of Defendants' current and former hourly production/manufacturing employees who were paid for 40 or more hours during one or more workweek(s) and who were: (1) subject to Defendants' Timekeeping Policy or (2) received Additional Remuneration, beginning two (2) years preceding the filing of the original Complaint and continuing through the final disposition of this case (the "OPPA Subclass" or "OPPA Subclass Members").**

125. Named Plaintiff brings Count III under Federal Rule of Civil Procedure 23 as a class action on behalf of herself and all other members of the common law unjust enrichment subclass, defined as:

> **All of Defendants' current and former hourly production/manufacturing employees who were paid for 40 or more hours during one or more workweek(s) and who were: (1) subject to Defendants' Timekeeping Policy or (2) received Additional Remuneration, beginning six (6) years preceding the filing of the original Complaint and continuing through the final disposition of this case (the "Unjust Enrichment Subclass" or "Unjust Enrichment Members")**

126. Together, the OPPA Subclass and Unjust Enrichment Subclass constitute the State Law Class.

127. The State Law Class, as defined above, is so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that the State Law Class consists of at least fifty (50) or more persons.

The number of class members, as well as their identities, is ascertainable from the payroll and personnel records that Defendant maintained, and was required to maintain, pursuant to the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

128. Named Plaintiff is a member of the State Law Class, and her claims for unpaid wages are typical of the claims of other members of the State Law Class.

129. Named Plaintiff will fairly and adequately represent the State Law Class and the interests of all members of the State Law Class.

130. Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the State Law Class that he has undertaken to represent.

131. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the State Law Class. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and is fully qualified to prosecute the claims of the State Law Class in this case.

132. Questions of law and fact are common to the State Law Class and predominate over any questions affecting only individual members. The questions of law and fact common to the State Law Class arising from Defendants' conduct include, without limitation:

(a) whether Defendants violated state law by failing to timely and properly pay the State Law Class for all wages, including overtime wages, earned because of the violation(s) described herein;

(b) what amount of unpaid and/or withheld compensation is due to Named Plaintiff and the State Law Class on account of Defendants' violations of state law;

(c) whether the unpaid and/or withheld compensation remains unpaid in violation of state law;

(d) what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by state law is due to Named Plaintiff and the State Law Class on the overtime compensation, as applicable, or other entitled compensation that was withheld or not timely paid to them.

133. Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants with respect to the non-exempt employees comprised by the State Law Class.

134. Class certification is appropriate under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the State Law Class, making class relief appropriate with respect to Named Plaintiff and the State Law Class.

135. Class certification is appropriate under Rule 23(b)(3) because the questions of law and fact common to the State Law Class predominate over questions affecting individual members of the State Law Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

136. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's and members of the State Law Class's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Requiring the State Law Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many State Law Class members' claims are sufficiently modest that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Rule 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

137. Named Plaintiff and counsel are not aware of any interfering pending litigation on behalf of the State Law Class as defined herein.

## VI. CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 – FLSA COLLECTIVE ACTION FOR UNPAID OVERTIME COMPENSATION)

138. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

139. This claim is brought as a collective action by Named Plaintiff on behalf of himself and other members of the FLSA Collective against Defendants, which is comprised of individuals who may join this case pursuant to 29 U.S.C. § 216(b).

140. The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

141. During the three (3) years preceding the filing of this Complaint, Defendant employed Named Plaintiff and the FLSA Collective.

142. Named Plaintiff and the FLSA Collective were paid as non-exempt employees.

143. During the three (3) years preceding the filing of this Complaint, Named Plaintiff and the FLSA Collective worked more than forty (40) hours in one or more workweek(s), but they were not fully paid for all overtime compensation as a result of one or more of Defendant's policies and/or practices as alleged above.

144. Defendants violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to pay overtime for all hours worked over forty (40) hours in a workweek at one-and-one-half times (1.5x) their regular rates of pay because of Defendants' companywide policies and/or practices described herein.

145. Defendants knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendants willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective are entitled.

146. The exact total amount of overtime compensation that Defendants have failed to pay Named Plaintiff and the FLSA Collective is unknown at this time, as many of the records necessary to make such precise calculations are believed to be in Defendants' possession.

147. Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and the FLSA Collective overtime compensation. Defendants' deliberate failure to pay overtime compensation to Named Plaintiff and the FLSA Collective was neither reasonable nor in good faith. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force of law.

148. As a result of Defendants' willful violations of the FLSA, Named Plaintiff and the FLSA Collective were injured in that they did not receive all wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and the FLSA Collective to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT II**
**(O.R.C. § 4113.15 – RULE 23 CLASS ACTION**
**FOR OPPA VIOLATION ON BEHALF OF OPPA SUBCLASS)**

149. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

150. At all times relevant, Named Plaintiff and the OPPA Subclass Members have been employed by Defendants.

151. At all times relevant, Defendants (as applicable) were entities covered by the OPPA, and Named Plaintiff and OPPA Subclass Members have been employed by Defendants within the meaning of the OPPA.

152. The OPPA requires Defendants to pay Named Plaintiff and OPPA Subclass Members all wages, including overtime and non-overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

153. As outlined above, Defendants did not, as required by O.R.C. § 4113.15(A), on or before the first day of each month, pay all wages earned by Named Plaintiff and the members of the OPPA Subclass on or before the first day of each month, the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and did not, on or before the fifteenth day of each month, pay these employees the wages earned by them during the last half of the preceding calendar month.

154. As a result, Named Plaintiff's and OPPA Subclass Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

155. Defendants' violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other OPPA Subclass Members in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

156. Defendants knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and the members of the OPPA Subclass all

wages owed in a timely fashion as required by Ohio law. Defendants' deliberate failure to timely pay all compensation owed to Named Plaintiff, and the members of the OPPA Subclass, was neither reasonable, nor was the decision not to pay in accordance with O.R.C. § 4113.15 made in good faith. By engaging in these practices, Defendants violated Ohio law and regulations that have the force of law.

157. As a result of Defendants' violation of the OPPA, Named Plaintiff and OPPA Subclass Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

**COUNT III**
**(UNJUST ENRICHMENT – RULE 23 CLASS ACTION ON BEHALF OF THE UNJUST ENRICHMENT SUBCLASS)**

158. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

159. Named Plaintiff brings this claim on behalf of herself and the Unjust Enrichment Subclass as a result of Defendants' suffering or permitting her and the Unjust Enrichment Subclass to work for its benefit and for not paying them non-overtime wages for all the time that they worked due to the one of more of the pay policies/practices alleged above.

160. As hereinabove alleged, Named Plaintiff and the Unjust Enrichment Subclass Members conferred a benefit upon Defendants in that Defendants received a direct monetary benefit from employees by retaining wages Named Plaintiff and the Ohio Subclass were entitled to be paid. However, Named Plaintiff and the Unjust Enrichment Subclass were not paid the hourly rates that they were entitled and/or promised to be paid for all hourly work completed as a result of Defendants' pay policies/practices.

161. Defendants knew that it retained one or more benefits to the detriment of Named Plaintiff and the Unjust Enrichment Subclass in the form of unpaid wages, but nevertheless failed to pay them anyways.

162. Defendants have been unjustly enriched at the expense of Named Plaintiff and the Unjust Enrichment Subclass by the retention of promised hourly wages that were earned and that rightfully belong to Named Plaintiff and the Unjust Enrichment Subclass. Defendants were unjustly enriched in that it induced Named Plaintiff and the Unjust Enrichment Subclass to perform work for the benefit of Defendants and retained the benefit of this work without having paid for the same.

163. Allowing Defendants to retain the benefits provided by Named Plaintiff and the Unjust Enrichment Subclass – free, unpaid labor – under the circumstances presented as outlined above, is demonstrably unjust. Defendants has retained the benefit of Named Plaintiff's and the Unjust Enrichment Subclass's services without compensating them as promised, under circumstances in which it would be unjust and unconscionable to permit Defendants to do so.

164. As a result of Defendants' having been unjustly enriched, Named Plaintiff and the Unjust Enrichment Subclass are entitled to compensation for the value of the benefit Named Plaintiff and the Unjust Enrichment Subclass conferred on Defendants.

165. Having injured Named Plaintiff and the Unjust Enrichment Subclass, Defendants are liable to Named Plaintiff and the Unjust Enrichment Subclass in the full amount of regular wages that remain unpaid, pre- and post-judgment interest as applicable, costs and reasonable attorney's fees as may be allowed by the Court, an award of damages representing Defendants' employers' share of FICA, FUTA, state employment insurance, and any other required employment taxes, and such other and further relief as provided under law.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff respectfully requests judgment against Defendants and for an Order:

A. Tolling of the statute of limitations, *freely*, as to all would-be Opt-In Plaintiffs to the date this matter was initially filed;

B. Promptly order Defendants to provide all contact information, including but not limited to names, dates of employment, addresses, telephone numbers, and email addresses, of similarly situated individuals;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

D. Certifying this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Named Plaintiff and other members of the Ohio Class, who seek recovery under O.R.C. § 4113.15, and common law doctrine of unjust enrichment, and designating Named Plaintiff as representative of the State Law Class, and counsel of record as Class Counsel for the State Law Class;

E. Finding that Defendants' wage and hour policies and/or practices as alleged herein violate the FLSA, the OPPA, and the doctrine of unjust enrichment;

F. Entering judgment against Defendants for damages for all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

G. Entering judgment against Defendants for damages for all unpaid compensation owed to Named Plaintiff and the OPPA Subclass during the applicable statutory period under O.R.C. § 4113.15 and continuing through trial;

H. Entering judgment against Defendants for damages for all unpaid compensation owed to Named Plaintiff and the Unjust Enrichment Subclass during the applicable six-year period preceding commencement of the action and continuing through trial;

I. Entering judgment against Defendants for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and the FLSA Collective during the applicable statutory period under the FLSA and continuing through trial;

J. Awarding to Named Plaintiff, the FLSA Collective, and Ohio Class Members unpaid compensation, including overtime wages as to be determined at trial

together with any liquidated damages allowed by the OPPA, including but not limited to an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per Ohio Class member, whichever is greater;

K. Awarding Named Plaintiff, the FLSA Collective, and Ohio Class prejudgment interest, post-judgment interest, and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

L. Award monetary relief to Named Plaintiff and the Unjust Enrichment Subclass in an amount sufficient to divest Defendants of the amounts gained by its unjust enrichment;

M. Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

N. Awarding to Named Plaintiff, the FLSA Collective, and State Law Class attorneys' fees required for prosecution of this action, expert fees, and reimbursement of all costs and expenses;

O. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

P. Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

Q. Awarding such other and further relief as this Court may deem equitable, necessary, just, or proper.

Respectfully submitted,

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
4400 N. High St., Suite 310
Columbus, Ohio 43214
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

Matthew B. Bryant (0085991)
Esther E. Bryant (0096629)
**BRYANT LEGAL, LLC**
3131 Executive Parkway, Suite 106
Toledo, Ohio 43606

Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: ebryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and other members of the proposed FLSA Collective and proposed Rule 23 class*

**JURY DEMAND**

Named Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)